**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **TOWERS WATSON & CO. n/k/a WTW** | § | |
| **DELAWARE HOLDINGS LLC,** | § | |
| | § | **Civil Action No. _____** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **NATIONAL UNION FIRE** | § | |
| **INSURANCE COMPANY OF** | § | |
| **PITTSBURGH, PA, FEDERAL** | § | |
| **INSURANCE COMPANY, U.S.** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY, TRAVELERS** | § | |
| **CASUALTY AND SURETY** | § | |
| **COMPANY OF AMERICA, LIBERTY** | § | |
| **INSURANCE UNDERWRITERS INC.,** | § | |
| **ALLIED WORLD NATIONAL** | § | |
| **ASSURANCE COMPANY, and** | § | |
| **IRONSHORE INDEMNITY INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>VERIFIED COMPLAINT</u>**

Towers Watson & Co. n/k/a WTW Delaware Holdings LLC ("Towers Watson"), by and through its undersigned counsel, for its Complaint against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG"), Federal Insurance Company ("Chubb"), U.S. Specialty Insurance Company ("U.S. Specialty"), Travelers Casualty and Surety Company of America ("Travelers"), Liberty Insurance Underwriters Inc. ("Liberty"), Allied World National Assurance Company ("Allied World"), and Ironshore Indemnity Inc ("Ironshore") (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.   This is an action for declaratory relief, as well as for damages for breach of contract, and anticipatory breach of contract arising out of Defendants' repudiation of their obligations under their management liability insurance policies ("the Policies") sold to Towers Watson.

2.   The Policies obligate Defendants to pay for losses incurred by Towers Watson in connection with two lawsuits, *In re Willis Towers Watson plc Proxy Litigation*, Civ. A. No. 1:17-cv-01338-AJT-JFA (E.D. Va.) (the "Virginia Action") and *In re Towers Watson & Co. Stockholder Litigation*, Consolidated C.A. No. 2018-0132-KSJM (Del. Ch.) (the "Delaware Action"), that relate to the merger between Willis Group Holdings plc ("Willis") and Towers Watson.

3.   On June 30, 2015, Willis and Towers Watson announced a merger (the "Merger") of their respective companies.  Willis and Towers Watson were companies of similar size and, as such, the Merger was a "merger of equals" in which Towers Watson and Willis combined to create a new entity.  In the days and weeks after this announcement, the public trading price of the common stock of Towers Watson initially declined while the public trading price of the common stock of Willis appreciated.  Almost two years after the Merger closed, the Virginia Action and the Delaware Action were filed against Towers Watson and/or certain of its officers and directors.  The plaintiffs in both of these actions (each purporting to sue on behalf of a class of former Towers Watson shareholders) allege that certain misstatements and omissions were made in the proxy materials disseminated in connection with the shareholder vote in advance of the Merger.  The claim in the Virginia Action is for alleged violations of the federal securities laws.  The claim in the Delaware Action is for alleged breach of fiduciary duties.  The Virginia Action is headed rapidly towards trial, and the lead plaintiff seeks damages based on (1) a theory

that the Merger would not have occurred absent the alleged misstatement or omission in the proxy materials and (2) the value of an alleged stock drop it claims would have been "reversed" if the Merger had been terminated.  Towers Watson and the other defendants in the Actions dispute these allegations and are vigorously defending against all claims.

4.     Prior to the Merger, Towers Watson purchased a management liability insurance program from Defendants that provides coverage for precisely the types of claims and potential losses at issue in the Virginia and Delaware Actions.  Specifically, these Policies cover losses caused by securities or fiduciary duty litigation brought against Towers Watson by its shareholders, as well as coverage for conduct by Towers Watson and its directors and officers that took place prior to Towers Watson being purchased or merged into a new company.

5.     In direct violation of the terms of the Policies, Defendants have impermissibly declared that they will not cover or pay for any losses (other than certain defense costs) that Towers Watson or other insureds may incur as a result of a settlement of or judgment in the Virginia or Delaware Actions.

6.     The basis for Defendants' position is twofold.  First, AIG and certain Defendants assert coverage is barred for a settlement or judgment based on a clause in their policies known as the "Bump-up Clause."  The Bump-up Clause could preclude coverage where a claim contends the price paid for Towers Watson's acquisition of another company is inadequate, and the damages sought "represent[] the amount by which such price or consideration is effectively increased[.]"  In other words, this Clause pertains only to an acquisition of "an entity" *by* Towers Watson, not to an acquisition *of* Towers Watson itself.  Accordingly, the Bump-up Clause is facially inapplicable here because Towers Watson did not acquire another company.  Rather, Towers Watson merged with Willis.  Moreover, even if the Bump-up Clause did apply to an

acquisition *of* Towers Watson, it is still facially inapplicable because the Merger was not an acquisition of Towers Watson, but was rather a "merger of equals" in which Towers Watson and Willis combined to create a new entity.  Therefore, Defendants' reliance on this clause to exclude coverage in the Virginia and Delaware Actions is baseless.  Additionally, the plaintiff in the Virginia Action does not seek damages predicated on a "bump-up" of the consideration paid for Towers Watson.  Rather, the damages sought are premised on the theory that the Towers Watson shareholders would have *rejected* the Merger, and not been paid any consideration at all.  More specifically, the Virginia Action plaintiffs' expert presents damages calculations for losses caused by the diminution of the value of Towers Watson stock after the Merger was announced, not a hypothetical increase in the Merger price.

7.      Second, Defendants assert that coverage is not available for Towers Watson in the Virginia Action on the grounds that Towers Watson "no longer exists."  Again, this is at odds with the plain language of the Policies, which provide coverage for claims pertaining to Towers Watson's pre-transaction conduct where Towers Watson consolidates or merges with or into another organization.

8.      Defendants' refusal to provide coverage of any settlement or judgment in the Virginia and Delaware Actions thus either has no basis in the Policies whatsoever or is predicated on a pretextual reliance on the Bump-up Clause, which facially does not apply.  As a result, Towers Watson has been forced to bring this action to obtain the insurance coverage to which it is entitled.

9.      In this action, Towers Watson seeks damages for Defendants' breach of contract and anticipatory breach of contract, and a declaratory judgment that Defendants' coverage defenses do not bar coverage for a settlement of or judgment in the Virginia and Delaware

Actions.  Towers Watson further asserts that Defendants breached the implied covenant of good faith and fair dealing by unreasonably refusing to comply with the plain terms of the Policies, failing to conduct a reasonable coverage investigation, misrepresenting pertinent facts and provisions, and placing their own interests above those of their insureds.

## **THE PARTIES**

10.     Towers Watson is currently a Delaware limited liability corporation, with its former principal place of business in Virginia.

11.     Non-party Willis Towers Watson plc ("WTW"), the merged organization of which Towers Watson is now a wholly owned subsidiary, is a public limited company incorporated in Ireland with its principal place of business in London.

12.     Upon information and belief, AIG is a Pennsylvania corporation with its principal place of business in New York.  Upon information and belief, AIG is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

13.     Upon information and belief, Chubb is an Indiana corporation with its principal place of business in New Jersey.  Upon information and belief, Chubb is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

14.     Upon information and belief, Defendant U.S. Specialty is a Texas corporation with its principal place of business in Texas.  Upon information and belief, U.S. Specialty is authorized to sell or write insurance in Virginia and, at all material times, has conducted and

continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

15.     Upon information and belief, Defendant Travelers is a Connecticut corporation with its principal place of business in Connecticut.  Upon information and belief, Travelers is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

16.     Upon information and belief, Defendant Liberty is an Illinois corporation with its principal place of business in New York.  Upon information and belief, Liberty is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

17.     Upon information and belief, Defendant Allied World is a New Hampshire corporation with its principal place of business in New York.  Upon information and belief, Allied World is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

18.     Upon information and belief, Defendant Ironshore is a Minnesota corporation with its principal place of business in New York.  Upon information and belief, Ironshore is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Towers Watson, a Delaware organization with its former principal place of business in Virginia.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Towers Watson and Defendants, and the amount in controversy exceeds seventy five thousand dollars ($75,000), exclusive of interest and costs.

20.     This Court has jurisdiction over each Defendant because each Defendant is authorized either to sell or to write insurance in Virginia and, at all material times, has conducted business within the Commonwealth of Virginia, including by writing the subject policies to Towers Watson, which was a Virginia headquartered company at the time the policies were issued.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the policies giving rise to the claims for relief were issued in the district.

## FACTUAL ALLEGATIONS

22.     WTW is a world-leading multinational risk management, insurance brokerage, and advisory company.   WTW has 45,000 employees serving more than 140 countries and markets.  Prior to the Merger, Towers Watson was a global professional services firm focused on helping organizations improve performance through risk management, human resources and actuarial and investment consulting.   Prior to the Merger, Willis was a global risk advisor, insurance brokerage and reinsurance brokerage company headquartered in London.

## THE INSURANCE POLICIES

23.     As part of its risk management efforts, Towers Watson annually purchased management liability insurance to insure itself against third-party claims alleging wrongful conduct on the part of Towers Watson, its officers and directors, and its subsidiaries.

24.     The Towers Watson insurance program for the period of January 1, 2015 to January 1, 2016 provides $80 million in relevant coverage and is comprised of primary policy No. 02-420-94-73, sold by AIG (the "Primary Policy") (**Exhibit A**), and six layers of excess coverage, all in excess of a $1 million self-insured retention, as follows:  The Primary Policy, with a $15 million limit;

(a) first layer excess Policy No. 8221-5440, issued by Chubb (**Exhibit B**), with limits of $15 million in excess of $15 million;

(b) second-layer excess Policy No. 14-MGU-15-A33776, issued by U.S. Specialty (**Exhibit C**), with limits of $10 million in excess of $30 million;

(c) third-layer excess Policy No. 105877037, issued by Travelers (**Exhibit D**), with limits of $10 million in excess of $40 million;

(d) fourth-layer excess Policy No. DO4N894232006, issued by Liberty (**Exhibit E**), with limits of $10 million in excess of $50 million;

(e) fifth-layer excess Policy No. 0305-2092, issued by Allied (**Exhibit F**), with limits of $10 million in excess of $60 million;

(f) sixth-layer excess Policy No. 000080405, issued by Ironshore (**Exhibit G**), with limits of $10 million in excess of $70 million;

25.     Unless otherwise specified, the excess policies all follow form to the terms and conditions of the Primary Policy.  The Primary Policy and excess policies are referred to collectively herein as the "Policies."

26.     The insuring agreements of the Primary Policy include the following coverage:[1]

(a)     Insuring Agreement (B)(1) of the Primary Policy states as follows:

---

[1] The terms in bold are defined terms within the Policies.

This policy shall pay the **Loss** of an **Organization** that arises from any: (1) **Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person** […] but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person**.

(b)     Insuring Agreement (C)(1) of the Primary Policy states as follows:

This policy shall pay the **Loss** of any **Organization**: (1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**

27.     The Primary Policy defines "**Organization**" and "**Named Entity**" to be Towers Watson.

28.     The Primary Policy defines "**Insured**" to include an "**Organization**" or "**Insured Person**."

29.     The Primary Policy defines "Insured Person" to include any "**Executive of an Organization,**" any "**Employee of an Organization,**" and "**Outside Entity Executive**."

30.     Towers Watson and Mr. John Haley (the former CEO of Towers Watson and current CEO of WTW) both qualify as Insureds because each is either an Organization or an Executive of an Organization.

31.     The Primary Policy defines "**Claim**" to include, *inter alia*, a civil proceeding for monetary damages.

32.     The Primary Policy defines "**Securities Claim**" to include an action brought by security holders of an Organization with respect to their interest in such securities.

33.     The Primary Policy defines "**Loss**" to include "Damages, Settlements, Judgments […] and Defense Costs."

34.     The Primary Policy defines "**Wrongful Act**" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, [or] omission[.]"

35.     The definition of **Loss** includes the following provision (the "Bump-up Clause"), that Defendants have raised in the context of this dispute:

> In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

36.     The Primary Policy also includes a "Survival and Merger Clause" as follows:

> In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**[.]

37.     The Primary Policy defines a "**Transaction**" as, in relevant part, "the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity."

**A.  THE MERGER**

38.     On June 30, 2015 Willis and Towers Watson announced a merger of their respective companies.  In the day after this announcement, the public trading price of the common stock of Towers Watson initially declined as the public trading price of the common stock of Willis appreciated.  The Merger was completed on January 4, 2016, resulting in a new organization named Willis Towers Watson, plc.

**B.  THE LAWSUITS AGAINST TOWERS WATSON**

**i.     The Virginia Action**

39.      On or about November 21, 2017, a former Towers Watson shareholder filed the Virginia Action, a putative class action lawsuit against, among others, Willis, Towers Watson, WTW, ValueAct Capital Management, L.P. ("ValueAct"), John Haley, Dominic Casserley

(Willis's former CEO), and Jeffrey Ubben (a former Willis director and CEO of ValueAct, Willis' second-largest shareholder at the time of the Merger), alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the Merger between Willis and Towers Watson.  In general, the lead plaintiff in the Virginia Action alleges that certain misstatements and omissions regarding an alleged conversation Mr. Haley had with Mr. Ubben concerning Mr. Haley's future compensation as CEO of WTW created a conflict of interest and should have been disclosed to Towers Watson shareholders prior to the shareholder vote on the Merger.

40.     According to the amended complaint in the Virginia Action (**Exhibit H**), after the Merger was announced, Towers Watson's public trading price initially fell on the announcement of the Merger, and certain proxy advisory firms recommended that Tower Watson shareholders vote against the Merger.

41.     The Virginia Action plaintiffs allege that, during Merger negotiations, Jeffrey Ubben allegedly proposed a large compensation package to the CEO and Chairman of Towers Watson, John Haley, who became the CEO of WTW after the Merger was completed.  It is alleged that Towers Watson and Mr. Haley made material misstatements and omissions in the proxy materials by failing to disclose this alleged proposed compensation package.  Based on these allegations, the Virginia Action asserts the following causes of action: (1) violation of Section 14(a) of the Exchange Act by WTW, Willis, Towers Watson, Mr. Haley and Mr. Casserley; and (2) violation of Section 20(a) of the Exchange Act by Mr. Haley, Mr. Casserley, Mr. Ubben and ValueAct.

42.     The Virginia Action plaintiff seeks damages to compensate a putative class of Towers Watson shareholders for the alleged diminution of value of their Towers Watson stock

after the Merger was announced.  In calculating the Virginia Action class's putative damages, lead plaintiff's expert, Dr. David Tabak, presumes that Towers Watson's shareholders "would have voted down the merger and that there would have been no possibility of a new, more generous offer by Willis."  **Exhibit I**.  Towers Watson and the other defendants in the Virginia Action dispute these allegations and are in the process of vigorously defending against the claims.  The Virginia Action is currently on an expedited case schedule, with document discovery already completed and depositions about to be completed.  The dispositive motion deadline is September 14, 2020.

<div align="center">

ii.      **The Delaware Action**

</div>

43.     On or about April 2, 2018, the Delaware Court of Chancery consolidated three pending actions into the Delaware Action.  Like the Virginia Action, the operative amended complaint (**Exhibit J**) also alleges that, during Merger negotiations, Mr. Ubben allegedly proposed a large compensation package to Mr. Haley, who became the CEO of WTW after the Merger was completed.  The Delaware Action plaintiffs allege that this alleged compensation proposal should have been disclosed to the Towers Watson board of directors.  The Delaware Action includes many of the same defendants as in the Virginia Action, generally alleges the same misstatements and omissions regarding discussions concerning Mr. Haley's compensation package, and further alleges that the Towers Watson board of directors breached their fiduciary duties by allowing Mr. Haley to negotiate the Merger between Willis and Towers.  On July 25, 2019, the Delaware Court of Chancery dismissed the amended complaint.  The Delaware Action plaintiffs subsequently appealed this decision to the Delaware Supreme Court as to their claims against Mr. Haley, Mr. Ubben, and ValueAct only.  On June 30, 2020, the Supreme Court for the State of Delaware reversed and remanded the Delaware Court of Chancery's dismissal of the

Delaware Action plaintiffs' amended complaint.   The Delaware Action has therefore recommenced proceedings.   The plaintiffs in the Delaware Action have not yet submitted an expert report indicating the damages theory they intend to use.   Towers Watson and the other defendants in the Delaware Action dispute the Delaware Action plaintiff's allegations and are in the process of vigorously defending against the claims.

### C.   DEFENDANTS IMPROPERLY REFUSE TO COVER A POTENTIAL SETTLEMENT OR JUDGMENT IN THE ACTIONS

44.     Towers Watson timely notified Defendants of the Virginia Action and the Delaware Action.

45.     AIG, the primary insurer, indicated that it would reimburse Towers Watson for certain of its defense costs incurred in its defense of these actions, but has disputed its obligation to pay for any damages that Towers Watson may incur in connection with any settlement of or judgment in the Virginia and Delaware Actions.

46.     To date, all other Defendants have adopted AIG's coverage position and on that basis have denied any obligation to pay losses that Towers Watson may incur in connection with any settlement of or judgment in the Virginia Action and Delaware Action.

47.     Defendants assert that coverage is barred by two limiting clauses in the Primary Policy.   Defendants are wrong.

48.     First, Defendants assert that coverage is barred by a so-called "Bump-up Clause." The language of the Bump-up Clause, however, refers to the "acquisition" of "an entity," an undefined term that does not encompass the acquisition of a defined "Insured" or "Organization," such as Towers Watson.   Thus, the clause was clearly intended to apply to a situation in which Towers Watson acquired another entity, *not* where Towers Watson was, itself, acquired.   If Defendants had intended for the Bump-up Clause to encompass scenarios in which

insureds such as Towers Watson were purchased, the language of the Bump-up Clause would say so expressly.  For example, Defendants could have drafted, but *did not* draft, the clause to cover "the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of *the Organization*."  If accepted, Defendants' incorrect and over-expansive reading of the clause would effectively exclude all insurance for alleged proxy statement disclosure violations in connection with a completed acquisition of an insured, thereby eliminating the principal purpose of a policy purchased to protect directors and officers in the event of a merger.  Again, if that were the intent, the Primary Policy would have expressly said so.  To the extent that the Bump-up Clause is deemed ambiguous, fundamental principles of contract interpretation provide that any ambiguity in an insurance contract should be construed against the Defendant insurers.

49.    Even if the Bump-up Clause were interpreted to also apply to the "acquisition" of Towers Watson, it is still inapplicable, because Towers Watson was not acquired.  The transaction between Watson and Willis was a *merger*, not an acquisition; two distinct concepts. More specifically, the Merger was a "merger of equals," meaning that one company was not purchasing the other, but that Towers Watson and Willis shareholders would each hold approximately 50% of the merged entity.  Towers Watson also appointed half of the merged entity's board of directors and half of its top management committee members (including the CEO and CFO).  Furthermore, the Policies expressly mention the possibility of the "Named Entity consolidating with or merging into another entity such that the Named Entity is not the surviving entity"—the exact situation which transpired here—which further indicates that the parties contemplated the present scenario and did *not* intend the Bump-up Clause to apply to that

situation.  In sum, without an "acquisition" of or by Towers Watson, the Bump-up Clause is inapplicable on its face, under any construction.

50.     Furthermore, Defendants assert that the Bump-up Clause precludes any coverage because the underlying actions are purportedly tied to inadequate consideration provided to Towers Watson shareholders in the Merger.  The plain language of the Bump-up Clause, however, does not apply to the underlying actions.  The Bump-up Clause is not implicated unless "any settlement or judgment represent[s] the amount by which such [merger] price or consideration is effectively increased."  Here, as plaintiff's expert report in the Virginia Action makes explicit, any settlement or judgment in the Virginia Action would *not* be premised on any increase in Merger consideration but rather on the alleged diminution of value of the stock after the Merger was announced.  Indeed, the Virginia Action plaintiff's damages theory is predicated on the presumption that the Merger would *not* have been consummated had the allegedly appropriate disclosures been made, and thus there could not have been any additional Merger consideration at all.

51.     Second, Defendants assert that coverage is barred in the Virginia Action on the grounds that Towers Watson "no longer exists" and thus is not an Organization under the Primary Policy.  This is directly contrary to the plain language of the Primary Policy, which provides coverage for pre-"Transaction" conduct when Towers Watson "consolidat[es] or merge[s] with another entity[.]"  This is exactly what happened in the Merger.  Therefore, a settlement or judgment in the underlying actions would not be barred by these policy provisions.

52.     Despite the inapplicability of the Bump-up Clause to the Virginia and Delaware Actions, and despite the fact that Towers Watson's pre-Merger conduct is explicitly covered by the Policies, Defendants have refused to budge from their wrongful denial of coverage.  Nor

have they been able to offer any substantive explanation regarding the Virginia Action as to how a damages theory that presumes the Merger was rejected (and seeks recoupment for an alleged drop in Towers Watson's stock price) could be found to "represent" an increase in the Merger price.  Further, given the fact the Policies explicitly cover conduct engaged in by Towers Watson prior to it "merging into another entity," Defendants have provided no justification for their denial of coverage on the basis that Towers Watson "no longer exists."

53.     Defendants' inability to articulate any substantive basis for their positions underscores that Defendants' continued reliance on the Bump-up Clause to deny coverage is wholly pretextual.  Their refusal to pay Towers Watson's losses is not fairly debatable.

54.     Towers Watson purchased the Policies in order to cover losses related to, among other things, securities claims, mergers and acquisitions litigation (including that in which Towers Watson was merged with another entity), and breach of fiduciary duty claims against its officers and directors—precisely the claims at issue in the Virginia and Delaware Actions.  By denying coverage when these losses clearly would be covered under the Policies and all prerequisites to coverage have been met, Defendants have repudiated their contractual obligations and common law obligations to Towers Watson.  Additionally, in relying on these inapplicable provisions to bar coverage, Defendants have acted unreasonably, misstated the import of these provisions, and placed their own interests above those of their insureds, thereby breaching the Policies' implied covenant of good faith and fair dealing.

55.     Section 12.F.1, as amended by Endorsement #7, of the Primary Policy requires disputes arising under the Primary Policy to be submitted to non-binding mediation.  Section 12.F.1of the Primary Policy further prohibits any judicial or arbitration proceeding regarding

such dispute to be commenced "until at least Sixty (60) days shall have elapsed from the date of the termination of the mediation."

56.     Towers Watson and Defendants mediated their dispute on May 21, 2020.  Despite Towers Watson's good faith best efforts to reach a resolution, the mediation did not result in a settlement, and more than 60 days has passed since the conclusion of the mediation.

## FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

57.     Towers Watson repeats and realleges the allegations set forth in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     The Policies constitute valid and enforceable contracts between Towers Watson and Defendants, and Towers Watson was the named insured under the Policies.

59.     Towers Watson has paid all premiums, provided prompt notice of the claim, and otherwise performed all obligations required of it under the Policies.

60.     Pursuant to the terms of their respective Policies, each Defendant is obligated to pay Towers Watson's losses, including losses resulting from a settlement or judgment in the Virginia Action and Delaware Action, subject only to the attachment points and limits of liability of the Policies.

61.     As detailed above, the Virginia and Delaware Actions fall squarely within the insuring agreements of the Policies and coverage is not otherwise excluded by any terms or conditions of the Policies.  Any amounts incurred by Towers Watson in a settlement or judgment in the Virginia Action and Delaware Action, including amounts paid to indemnify Mr. Haley for a settlement or judgment in those actions, would constitute covered Loss under the Policies.

62.     Defendants have denied coverage and not paid any amounts to Towers Watson in connection with the Virginia Action or Delaware Action, and have unequivocally refused to make any payment towards a settlement in the Virginia Action or Delaware Action.  These actions of Defendants constitute a material breach of the Policies.

63.     Defendants have also violated the implied covenant of good faith and fair dealing in the Policies, which obligates an insurer to investigate a claim in good faith and promptly pay covered claims, and to refrain from taking any action or litigation position that would deprive the insured of the benefits of the contract or cause undue hardship or harm to the other party.

64.     Defendants breached the duty of good faith and fair dealing by denying coverage based on inapplicable policy provisions, misstating applicable policy language and pertinent facts, failing to conduct an adequate coverage investigation, and refusing to approve reasonable settlement offers within Policy limits.  This conduct was not due to negligence or mistake but, rather was calculated to further Defendants' own economic interests at the expense of Towers Watson, denying Towers Watson the benefits of the Policy.  These actions of Defendants constitute a material breach of the Policies.

65.     Towers Watson has complied with all terms, conditions and prerequisites to coverage set forth in the Policies and remains ready to perform all of their obligations under the Policies, or has been excused from compliance by Defendants' breaches or other conduct.

66.     As a result of Defendants' breach and repudiation of their obligations under their Policies, Towers Watson has suffered damages of not less than $75,000, in an amount to be determined at trial, including compensatory and consequential damages regardless of the Policies' limits, as well as attorneys' fees.

## SECOND CAUSE OF ACTION

## (ANTICIPATORY BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

67.     Towers Watson repeats and realleges the allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68.     The Policies constitute valid and enforceable contracts between Towers Watson and Defendants, and Towers Watson was the named insured under the Policies.

69.     Pursuant to the terms of their respective Policies, each Defendant is obligated to pay Towers Watson's losses, including losses resulting from a settlement of or judgment in the Virginia Action and Delaware Action, subject only to the attachment points and limits of liability of the Policies.

70.     As detailed above, the Virginia and Delaware Actions fall squarely within the insuring agreements of the Policies, and coverage is not otherwise excluded by any terms or conditions of the Policies.  Any amounts incurred by Towers Watson in a settlement or judgment in the Virginia Action and Delaware Action, including amounts paid to indemnify Mr. Haley for a settlement or judgment in those actions, would constitute covered Loss under the Policies.

71.     Defendants have anticipatorily repudiated their obligations to pay such losses under their Policies in that they have unequivocally indicated that they will not under any circumstances make any payment towards any settlement of or judgment in the Virginia Action or Delaware Action, based on a fundamental misapplication of the Bump-up Clause.  These actions of Defendants constitute a material breach of the Policies.

72.     Defendants have also violated the implied covenant of good faith and fair dealing in the Policies, which obligates an insurer to investigate a claim in good faith and promptly pay

covered claims, and to refrain from taking any action or litigation position that would deprive the insured of the benefits of the contract or cause undue hardship or harm to the other party.

73.     Defendants breached the duty of good faith and fair dealing by denying coverage based on inapplicable policy provisions, misstating applicable policy language and pertinent facts, failing to conduct an adequate coverage investigation, and refusing to approve reasonable settlement offers within Policy limits.  This conduct was not due to negligence or mistake but, rather was calculated to further Defendants' own economic interests at the expense of Towers Watson, denying Towers Watson the benefits of the Policy.  These actions of Defendants constitute a material breach of the Policies.

74.     Towers Watson has complied with all terms, conditions and prerequisites to coverage set forth in the Policies and remains ready to perform all of their obligations under the Policies, or has been excused from compliance by Defendants' breaches or other conduct.

75.     As a result of Defendants' anticipatory breach and repudiation of their obligations under their Policies, Towers Watson will suffer damages of not less than $75,000 in an amount to be determined at trial, including compensatory and consequential damages regardless of the Policies' limits, as well as attorneys' fees.

### THIRD CAUSE OF ACTION

### (DECLARATORY RELIEF AGAINST ALL DEFENDANTS – DUTY TO INDEMNIFY)

76.     Towers Watson repeats and realleges the allegations set forth in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.     Pursuant to the terms of their respective Policies, each Defendant is obligated to pay Towers Watson's losses, including losses resulting from a settlement or judgment in the

Virginia Action and Delaware Action, subject only to the attachment points and limits of liability of the Policies.

78.     As detailed above, the Virginia Action and Delaware Action fall squarely within the insuring agreements of the Policies and coverage for these actions is not otherwise excluded in the Policies.  Any amounts incurred by Towers Watson in a settlement of or judgment in the Virginia Action and Delaware Action, including amounts paid to indemnify Mr. Haley for a settlement or judgment in those actions, would constitute covered Loss under the Policies.

79.     Defendants dispute their legal obligations to pay such losses.

80.     Pursuant to 28 U.S.C. § 2201, Towers Watson is entitled to a declaration by this Court of the Defendants' obligations under the Policies with regard to the Virginia Action and Delaware Action.

81.     An actual controversy of a justiciable nature presently exists between Towers Watson and Defendants concerning the proper construction of the Policies, and the rights and obligations of the parties thereto, with respect to losses incurred in connection with the Virginia Action, and Delaware Action.

82.     The issuance of declaratory relief by this Court will terminate the existing controversy among the parties.

83.     Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Towers Watson and against Defendants, declaring that Defendants are obligated to pay all losses incurred in connection with the Virginia Action and Delaware Action, subject to the applicable attachment points and limits of the Policies, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, the Towers Watson prays for relief as follows:

i.        On the first cause of action, Towers Watson requests that this Court enter judgment against all Defendants, awarding Towers Watson compensatory and consequential damages, regardless of the Policies' limits, in an amount to be determined in this action, plus attorneys' fees under Va. Code Ann. § 38.2-209, and pre- and post-judgment interest to the extent permitted by law;

ii.        On the second cause of action, Towers Watson requests that this Court enter judgment against all Defendants, awarding Towers Watson compensatory and consequential damages, regardless of the Policies' limits, in an amount to be determined in this action, plus attorneys' fees under Va. Code Ann. § 38.2-209, and pre- and post-judgment interest to the extent permitted by law;

iii.        On the third cause of action, Towers Watson requests that this Court enter a declaratory judgment in favor of Towers Watson and against all Defendants, declaring that each Defendant is obligated to pay Towers Watson, upon attachment and up to the applicable liability limit of their respective policies, for any losses incurred in connection with the Virginia Action and/or Delaware Action;

iv.        On all causes of action, Towers Watson requests that this Court award Towers Watson all expenses incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees, costs, and prejudgment and post-judgment interest; and

v.        Additionally, Towers Watson requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Towers Watson hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: July 20, 2020

Robin L. Cohen (*pro hac vice* application to be filed)
Adam Ziffer (*pro hac vice* application to be filed)
James H. Smith (*pro hac vice* application to be filed)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
aziffer@mckoolsmith.com
jsmith@mckoolsmith.com

*Attorneys for Plaintiff Towers Watson & Co.*

and

*/s/ Marla J. Diaz*
Andrew J. Terrell (VSB #30093)
Marla J. Diaz (VSB #46799)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
703-280-9131
703-280-9139 facsimile
aterrell@wtplaw.com
mdiaz@wtplaw.com

*Attorneys for Plaintiff Towers Watson & Co.*