**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **TOWERS WATSON & CO. n/k/a WTW** | § | |
| **DELAWARE HOLDINGS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:20-cv-00810 AJT-JFA** |
| | § | |
| **NATIONAL UNION FIRE** | § | |
| **INSURANCE COMPANY OF** | § | |
| **PITTSBURGH, PA, FEDERAL** | § | |
| **INSURANCE COMPANY, U.S.** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY, TRAVELERS** | § | |
| **CASUALTY AND SURETY** | § | |
| **COMPANY OF AMERICA, LIBERTY** | § | |
| **INSURANCE UNDERWRITERS INC.,** | § | |
| **ALLIED WORLD NATIONAL** | § | |
| **ASSURANCE COMPANY, and** | § | |
| **IRONSHORE INDEMNITY INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Robin L. Cohen (*pro hac vice*)
Adam Ziffer (*pro hac vice*)
Orrie A. Levy (*pro hac vice*)
COHEN ZIFFER FRENCHMAN
   & MCKENNA LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 584-1890
Fax: (212) 584-1891
rcohen@cohenziffer.com
aziffer@cohenziffer.com
olevy@cohenziffer.com

Andrew J. Terrell (VSB #30093)
Marla J. Diaz (VSB #46799)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
703-280-9131
703-280-9139 facsimile
aterrell@wtplaw.com
mdiaz@wtplaw.com

*Attorneys for Plaintiff Towers Watson & Co.*

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF UNDISPUTED FACTS ................................................................ 5

I.      The Policies ................................................................................................ 5

II.     The Merger ................................................................................................ 7

III.    The Merger Litigation ................................................................................ 7

        A. The Virginia Action ........................................................................ 7

        B. The Delaware Action ....................................................................... 9

        C. Settlement of the Merger Litigation ............................................. 10

IV.     The Coverage Dispute ............................................................................ 11

V.      Procedural History ................................................................................. 12

LEGAL STANDARDS ................................................................................ 13

        A. Standards Applicable to a Motion for Summary Judgment ............. 13

        B. Standards Applicable to the Interpretation of Insurance Policies ...... 13

ARGUMENT ................................................................................................ 14

I.      The Bump-Up Exclusion Does Not Bar Coverage for the Settlements ............ 14

        A. The Settlement of the Virginia Action Did Not Represent an Effective Increase in Deal
           Consideration to Shareholders ........................................................... 15

        B. The Settlement of the Delaware Action Did Not Represent an Effective Increase in Deal
           Consideration to Shareholders ........................................................... 20

        C. Insurers' Contrary Arguments Fail .................................................... 21

        D. The Amount of the Settlements Allocable to Attorneys' Fees, Taxes, and Administrative
           Costs Does Not Represent an Increase in Deal Consideration ............. 24

CONCLUSION ................................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Reliance Ins. Co. v. Mitchell*,
   385 S.E.2d 583 (Va. 1989) ............................................................................................13, 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................................13

*In re Appraisal of Towers Watson & Co.*,
   2017 WL 4156120 (Del. Ch. Sept. 18, 2017) ......................................................................9

*Capitol Env't Servs., Inc. v. N. River Ins. Co.*,
   536 F. Supp. 2d 633 (E.D. Va. 2008) ................................................................................14

*Ceradyne, Inc. v. RLI Ins. Co.*,
   2022 WL 16735360 (C.D. Cal. Oct. 31, 2022) .................................................. 14-15, 17, 25

*CVR Refining, L.P. v. XL Specialty Ins. Co.*,
   2021 WL 5492671 (Del. Super. Nov. 23, 2021) ................................................................14

*Erie Ins. Exch. v. EPC MD 15, LLC*,
   822 S.E.2d 351 (Va. 2019) ............................................................................................13, 26

*Gardner Denver, Inc. v. Arch Ins. Co.*,
   2016 WL 7324646 (E.D. Pa. Dec. 16, 2016) ................................................................14, 25

*Genzyme Corp. v. Fed. Ins. Co.*,
   622 F.3d 62 (1st Cir. 2010) ................................................................................................14

*Gray v. Wesco Aircraft Holdings, Inc.*,
   454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd,* 847 F. App'x 35 (2d Cir. 2021) ......................16

*Hill v. State Farm Mut. Auto. Ins. Co.*,
   375 S.E.2d 727 (Va. 1989) ................................................................................................13

*Joy Glob. Inc. v. Columbia Cas. Co.*,
   555 F. Supp. 3d 589 (E.D. Wis. 2021), *aff'd sub nom. Komatsu Mining Corp.*
   *v. Columbia Cas. Co.*, 58 F.4th 305 (7th Cir. 2023) ....................................................... *passim*

*Kuebler v. Vectren Corp.*,
   13 F.4th 631 (7th Cir. 2021) ...............................................................................................17

*Lockspeiser v. W. Maryland Co.*,
    768 F.2d 558 (4th Cir. 1985) ................................................................................16

*Mack v. Resolute Energy Corp.*,
    2020 WL 1286175 (D. Del. Mar. 18, 2020), *aff'd sub nom. In re Resolute*
    *Energy Corp. Sec. Litig.*, 2022 WL 260059 (3d Cir. Jan. 27, 2022) ......................16

*Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*,
    2021 WL 347015 (Del. Super. Feb. 2, 2021), *cert. denied*, 2021 WL 772312
    (Del. Super. Mar. 1, 2021), *appeal refused sub nom. Nat'l Union Fire Ins. Co.*
    *of Pittsburgh, PA v. Northrop Grumman Innovation Sys., Inc.*, 248 A.3d 922
    (Del. 2021) ..................................................................................................14, 17, 19

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    806 F. App'x 603 (9th Cir. 2020) ..........................................................................16

*Onyx Pharms., Inc. v. Old Republic Ins.*,
    2022 WL 18143421 (Cal. Super. Ct. Dec. 30, 2022)..............................................14

*Sentry Select Ins. Co. v. Acuna*,
    2011 WL 5593159 (E.D. Va. Nov. 15, 2011) .........................................................14

*St. Paul Fire & Marine Ins. Co. v. Jacobson*,
    826 F. Supp. 155 (E.D. Va. 1993), *aff'd*, 48 F.3d 778 (4th Cir. 1995)...................13

*Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    2021 WL 4555188 (E.D. Va. Oct. 5, 2021) ...............................................9, 14, 16

*Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    67 F.4th 648 (4th Cir. 2023) ...................................................................12, 13, 14

*United Serv. Auto. Ass'n v. Pinkard*,
    356 F.2d 35 (4th Cir. 1966) ...................................................................................14

*In re Willis Towers Watson plc Proxy Litig.*,
    2020 WL 5361582 (E.D. Va. Sept. 4, 2020).............................................8, 9, 16

**Statutes**

Securities Exchange Act of 1934 Section 14(a) .................................................... *passim*

Securities Exchange Act of 1934 Section 20(a) .......................................................1, 8

**Rules**

Fed. R. Civ. P. 56..................................................................................................1, 13

Plaintiff Towers Watson & Co. n/k/a WTW Delaware Holdings LLC ("Towers Watson"), by and through its undersigned counsel, submits this memorandum of law in support of its motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(a).  Judgment should be entered in favor of Towers Watson because the settlements of two underlying lawsuits brought against Towers Watson fall squarely within the scope of the insurance policies sold by Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG"), Federal Insurance Company ("Chubb"), U.S. Specialty Insurance Company ("U.S. Specialty"), Travelers Casualty and Surety Company of America ("Travelers"), Liberty Insurance Underwriters Inc. ("Liberty"), Allied World National Assurance Company ("Allied World"), and Ironshore Indemnity, Inc. ("Ironshore") (collectively, "Insurers"), and Insurers cannot establish that coverage is barred by a bump-up exclusion in the policies.

## PRELIMINARY STATEMENT

Towers Watson paid significant premiums to Insurers for a directors and officers ("D&O") insurance program that expressly covers settlements of lawsuits, including securities lawsuits, alleging that Towers Watson's directors and officers engaged in wrongful acts in the context of common corporate transactions, including specifically mergers and acquisitions. Following just such a merger with Willis Group Holdings plc, Towers Watson and certain of its D&Os were sued in two lawsuits alleging that material misstatements and omissions were made leading up to the merger.

In 2021, Towers Watson settled those lawsuits for a total of $90 million (the "Settlements").  Specifically, Towers Watson paid $75 million to settle a federal securities class action alleging proxy violations under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Virginia Action").  At the same time, Towers Watson paid $15 million to settle a

1

putative class action lawsuit in the Delaware Court of Chancery alleging breaches of fiduciary duty based on similar allegations (the "Delaware Action"). Of the total $90 million paid in settlements, approximately $17.6 million was paid for plaintiffs' attorneys' fees, taxes, and administrative costs.

Rather than cover the Settlements, Insurers reflexively denied coverage, relying on a so-called Bump-Up Exclusion, which bars coverage only if Insurers can establish that *both* (1) the complaint in the lawsuit for which coverage is sought alleges the receipt of inadequate consideration following a corporate transaction, *and* (2) the settlement for which coverage is sought represents an effective increase in that consideration to shareholders. Remarkably, Insurers invoked the Bump-Up Exclusion long *before* the Settlements had even been reached. Now that the Settlements have been reached, Insurers cannot establish that either represents an effective increase in deal consideration to shareholders.

The Virginia Action plaintiff's primary theory of damages at the time of settlement – the only theory of damages the plaintiff's expert ever calculated – was not predicated on inadequate consideration. Rather, it was a price reversion theory, which assumed that if adequate disclosure had been made, Towers Watson's shareholders would have voted down the deal, the price of their stock would have reverted to its original price, and no merger consideration would have been exchanged. Pursuant to this theory, the plaintiff sought compensatory damages representing the amount by which their stock value had been harmed by the alleged proxy violation *prior* to the merger, rather than an increase in deal consideration. As this Court has previously recognized, this damages theory "*has nothing to do with whether the consideration*

*paid was adequate or inadequate by some measure*."  Dkt.[1] 108 at 72-73 (emphasis added).

That the plaintiff's damages expert also proffered an *alternative* damages theory based on a hypothetical renegotiation of the merger does not alter this conclusion.  Not only did the plaintiff's expert never calculate this theory, but federal courts (including the Fourth Circuit), have cast doubt on the viability of a Section 14(a) claim predicated on a bump-up theory.  Thus, this alternative theory merely underscores that the actual, potentially viable risk of liability Towers Watson settled was *not* a bump-up theory.  Put simply, Insurers cannot establish that the Virginia Action settlement represents an effective increase in deal consideration when that was not the primary relief the plaintiff sought, the plaintiff never calculated a theory of damages based on increased deal consideration, and the viability of a bump-up theory of damages under Section 14(a) is doubtful.

Unlike the Virginia Action, the Delaware Action settled before the plaintiffs had proffered a damages expert.  However, at the time of settlement, the plaintiffs could have pursued various non-bump-up theories of damages.  Accordingly, Insurers cannot carry their heavy burden to establish that the Delaware Action settlement represents an effective increase in deal consideration either.

That the Settlements did not represent an effective increase in deal consideration is further confirmed by the fact that Towers Watson expressly denied any liability in the settlement agreements, including specifically denying that the plaintiffs were entitled to any of the relief they sought in the underlying actions.  Likewise, the notices to class members did not suggest, let

---

[1] "Dkt." refers to the docket for this action, *Towers Watson & Co. n/k/a WTW Delaware Holdings LLC v. National Union Fire Insurance Company of Pittsburgh, PA. et. al.*, Case No. 1:20-cv-00810 (E.D. Va.).

alone state, that shareholders would be receiving increased merger consideration; instead, shareholders were told that the litigation concerned damages for alleged misrepresentations in the proxy.   And there were no findings by any court that shareholders received inadequate consideration. Accordingly, Insurers cannot establish that either settlement represents an effective increase in deal consideration to shareholders when the shareholders were never told this and when Towers Watson made clear in the settlement agreements that the Settlements *did not* represent such an increase.

At the very least, Insurers cannot establish that the amount of the Settlements paid for plaintiffs' attorneys' fees, taxes, and administrative costs, which totals $17,626,730.78, somehow represents an effective increase in deal consideration to shareholders.   This money was never paid to or controlled by shareholders.   Rather, these amounts represent compensation paid to plaintiffs' counsel for their time and effort and related litigation costs.   This conclusion is confirmed by the plain language of the Bump-Up Exclusion, which only applies to the particular "amount" of a settlement that represents an effective increase in deal consideration.   Therefore, even if Insurers could establish that the remainder of the settlement payments clearly and unambiguously represent an increase in deal consideration (they cannot), they certainly cannot establish that the Bump-Up Exclusion applies to the portion of the Settlements allocable to attorneys' fees, administrative costs, and taxes.

At bottom, Insurers cannot carry their heavy burden to establish that the Settlements represent an effective increase in deal consideration to shareholders.   This is particularly true when the Bump-Up Exclusion is construed strictly and narrowly in favor of coverage, as required.   At the very least, Towers Watson's interpretation of the exclusion is "equally possible" and, therefore, controls.   A contrary conclusion would severely restrict indemnity coverage for

proxy litigation arising from common M&A transactions, thereby defeating a key purpose of D&O insurance coverage and the express coverage provided by these policies.  Accordingly, this Court should grant Towers Watson's motion for partial summary judgment that the Bump-Up Exclusion does not bar coverage for the Settlements.

**STATEMENT OF UNDISPUTED FACTS**

**I.     The Policies**

Towers Watson paid substantial premiums to Insurers for an $80 million D&O insurance program for the policy period of January 1, 2015 through January 1, 2016, comprised of a primary policy sold by Defendant AIG (the "Primary Policy"), and excess policies sold by Defendants Chubb, U.S. Specialty, Travelers, Liberty, Allied World, and Ironshore (the "Excess Policies" and, together with the Primary Policy, the "Policies").  Exs. B-H.[2]  The Excess Policies follow form to the Primary Policy, meaning that, unless stated otherwise in the Excess Policies, the Excess Policies incorporate and adopt the terms, conditions, and definitions of the Primary Policy.  Ex. A ¶ 25; Exs. C-H.

The Primary Policy's Insuring Agreement covers, among other things: "**Loss** of any **Organization**: (1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**," Ex. B § I.C(1); and "**Loss** of an **Organization** that arises from any: (1) **Claim** . . . made against any **Insured Person** . . . for any **Wrongful Act** of such **Insured Person** […] but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person**," *id.* § I.B(1).  The Primary Policy expressly extends coverage to Towers Watson and its D&Os for the defense and settlement of

---

[2] All exhibits referenced herein are appended to Robin L. Cohen's declaration, submitted herewith.

lawsuits arising from common corporate transactions, including mergers and acquisitions. *Id.* § 10.

The Primary Policy defines "Claim" to include, among other things, a civil proceeding for monetary damages. *Id.* § 13, as amended by End. No. 51. "Securities Claim" is defined to include actions brought by Towers Watson securities holders with respect to their interest in such securities. *Id.* § 13, as amended by End. No. 55. "Organization" means Towers Watson and its subsidiaries. *Id.* § 13. "Wrongful Act" means "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, [or] omission." *Id.* The Primary Policy's "Loss" definition includes "Defense Costs" and "settlements." *Id.*

Thus, read as a whole, the Primary Policy provides broad coverage to Towers Watson and its D&Os for the defense and settlement of lawsuits arising from common corporate transactions, including securities claims and breach of fiduciary duty claims. From that broad coverage, the Primary Policy narrowly excludes coverage for a particular type of "Loss" as follows:

> In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased[.]

*Id.* § 13 (the "Bump-Up Exclusion"). Unlike other exclusions in the Primary Policy, which bar coverage for all Loss "in connection with any **Claim** made against an **Insured**" alleging or arising out of specified conduct, *see, e.g.*, *id.* § 4.B(1)-(4), the Bump-Up Exclusion has multiple independent elements, including that the particular "amount" of a settlement or judgment for which coverage is sought must represent an effective increase in deal consideration.

## II.     The Merger

On June 30, 2015, Willis Group Holdings plc ("Willis") and Towers Watson announced a "merger of equals" of their respective companies (the "Merger").  Ex. V at 38, 68.  Immediately following the merger announcement, the price of Towers Watson's publicly traded common stock declined while the price of Willis's publicly traded common stock appreciated.  Ex. I ¶ 71; Ex. K ¶¶ 9, 75, and 78.  The Merger closed on January 4, 2016.  Ex. I ¶ 2; Ex. K ¶ 17.  As contemplated by the Merger Agreement, upon the Merger's close, the newly combined entity was named Willis Towers Watson plc ("WTW").  Ex. V at 29.

## III.    The Merger Litigation

### A.      The Virginia Action

On November 21, 2017, a former Towers Watson shareholder filed a putative securities class action in the Eastern District of Virginia against Towers Watson, Willis, WTW, ValueAct Capital Management, L.P. ("ValueAct"), John Haley (CEO of Towers Watson and later of WTW), Dominic Casserley (Willis' CEO), and Jeffrey Ubben (Willis director and CEO of ValueAct, a 10.3% shareholder of Willis at the time the Merger was announced).  Ex. I at 1.  On February 20, 2018, the Court consolidated the action under the caption *In Re Willis Towers Watson plc Proxy Litigation*, 1:17-cv-1338-AJT-JFA (E.D. Va.) (the "Virginia Action") and appointed lead plaintiff (the "Lead Plaintiff") and lead counsel.  On March 9, 2018, the Lead Plaintiff filed the operative amended complaint.  Ex. I.

The Virginia Action amended complaint alleges violations of the federal securities laws in connection with the Merger.  Specifically, the complaint alleges, among other things, that in September 2015, Mr. Ubben and one of his ValueAct colleagues met with Mr. Haley (then CEO of Towers Watson) and proposed a large compensation package for Mr. Haley, who was slated

to become the CEO of WTW post-Merger.  *Id.* ¶ 80.  The complaint alleges that failure to disclose the meeting in the proxy materials violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  *Id.* ¶¶ 97-98; 229-235; 239.

Based on these alleged proxy disclosure violations, the Virginia Action, unlike an appraisal action, sought *compensatory damages*.  *Id.* ¶¶ 228-39.  The Lead Plaintiff's primary theory – the only damages theory the plaintiff ever calculated – was a price reversion theory. Ex. J ¶ 9.  Under this theory, the Lead Plaintiff's damages expert, Dr. David Tabak, calculated damages presuming that, upon fulsome disclosure, Towers Watson's stockholders would have rejected the Merger, and therefore, Towers Watson's stock price would have reverted to its value before the Merger was announced.  *Id.* ¶ 23.  Contrary to a "bump-up" theory of damages, which seeks relief representing the increased amount shareholders *should have* received as deal consideration based on a company's purported "true value," the Lead Plaintiff's price reversion theory assumes the Merger never would have occurred, and thus, no merger consideration would have been paid in the first instance.

Although Dr. Tabak referenced an "alternative" theory based on a "hypothetical renegotiation of the merger agreement had a full disclosure . . . been made," that theory was not an independent basis for damages, but simply offered as a reasonableness check on the primary theory.  *Id.* ¶¶ 31-33.  As this Court noted, Dr. Tabak did not even calculate such "alternative" damages.  *In re Willis Towers Watson plc Proxy Litig.*, 2020 WL 5361582, at *9 n.16 (E.D. Va. Sept. 4, 2020).  Indeed, this Court has repeatedly recognized that the Lead Plaintiff's theory of

damages was a price reversion theory that "*has nothing to do with whether the consideration paid was adequate or inadequate by some measure*."[3]  Dkt. 108 at 72-73 (emphasis added).

### B.     The Delaware Action

On April 2, 2018, the Delaware Court of Chancery consolidated three shareholder actions into *In re Towers Watson & Co. Stockholder Litigation*, C.A. No. 2018-0132-KSJM (Del. Ch.) (the "Delaware Action," together with the Virginia Action, the "Actions").   As this Court recognized, the Delaware Action alleged Delaware state law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against defendants Haley, ValueAct, and Ubben based on generally the same allegations of the Virginia Action.  *Towers Watson & Co*, 2021 WL 4555188, at *5.[4]   Unlike the Virginia Action, the Delaware Action plaintiffs had not yet articulated a theory of damages at the time of the settlement of the Actions.   However, the plaintiffs could have advanced non-"bump-up" damage theories, such as seeking damages equal to Haley's increased compensation package.

---

[3] *See also In re Willis Towers Watson*, 2020 WL 5361582, at *10 (recognizing that "Dr. Tabak's model purports to measure the loss in value all Towers stockholders experienced as a result of the Merger's announcement and approval as compared to what Towers stockholders would have retained (or obtained) had the Merger not been approved" (emphasis omitted)); *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2021 WL 4555188, at *4 (E.D. Va. Oct. 5, 2021) (framing Lead Plaintiff's damage theory as "a theory of 'out of pocket' damages based on the assumption that upon fulsome disclosure of the September 2015 meeting between Haley and Ubben, the Towers Watson stockholders would have voted against the Merger, the two companies would have gone their separate ways, and the price of the publicly traded Towers Watson stock would have 'reverted' back to its publicly traded price immediately before the announcement of the Merger on June 30, 2015"); Dkt. 108 at 26 (recognizing that "if the plaintiffs said, 'We are suing -- we allege, pursuant to Section 14(a), that as a result of the merger or acquisition, Towers Watson shareholders receive inadequate consideration,' that case would have been dismissed").

[4] Like the Virginia Action, the Delaware Action was not an appraisal action. Ex. I at 1.  Indeed, certain Towers Watson shareholders previously brought an appraisal action that settled.  *In re Appraisal of Towers Watson & Co.*, 2017 WL 4156120 (Del. Ch. Sept. 18, 2017).

**C.      Settlement of the Merger Litigation**

In November 2020, the parties settled the Actions for a combined total of $90 million, with the Virginia Action settling for $75 million and the Delaware Action settling for $15 million.  Ex. L at 6 (the "Virginia Stipulation"); Ex. P at 8 (the "Delaware Stipulation").

The settlement agreements and proposed notices of settlement to class members in both actions never once mention inadequate consideration as the basis of the claims being settled. Exs. L, P.  On the contrary, in a section titled "What is This Litigation About?," the proposed notice to class members describes the Virginia Action as alleging that (1) "the proxy materials jointly issued by Towers and Willis in 2015 in order to obtain stockholder approval for the Merger were misleading because they failed to disclose an alleged conflict of interest possessed by Haley;" (2) "this undisclosed conflict of interest on the part of Haley rendered certain statements in the proxy materials false and misleading;" and (3) "Towers shareholders were damaged by the alleged material misrepresentations and omissions in the proxy materials." Ex. L at Ex. A, A-1 at 8.  The notice further provided that "Delaware Lead Plaintiffs alleged, among other things, that Haley breached his fiduciary duties by not disclosing to Towers' board or stockholders an alleged conflict of interest he had with respect to the Merger, and by not negotiating the Merger at arm's-length."  *Id.* at Ex. A, A-1 at 2-3; *see also* Ex. P at Ex. B at 2-3. Thus, the very class members who were paid as part of the Settlements were never told that the payment amount represented an increase in deal consideration and, instead, were told that it represented damages in connection with alleged disclosure violations.

Moreover, of the $90 million in total Settlements, $17,626,730.78 was paid for plaintiffs' attorneys' fees, as well as administrative costs and taxes.  Specifically, the Virginia Action settlement awarded the Lead Plaintiff's counsel $12 million in attorneys' fees and an additional

$1,658,540.74 in litigation-related expenses and taxes.  Ex. O ¶ 3.  The Delaware Action settlement awarded plaintiffs' counsel $3.75 million in attorneys' fees and an additional $218,190.04 in litigation-related expenses and taxes.  Ex. R ¶ 12. None of these amounts were *ever* paid to, held by, or controlled by the plaintiffs.  Rather, they were held in the custody of the court and paid to plaintiffs' counsel *before* any amounts were distributed to class members.  *See, e.g.*, Ex. L at Ex. A ¶ 21 (the settlement fund "shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court"); Ex. L ¶ 11 (same); *id.* ¶¶ 17-19 ("attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon reward"); Ex. Q at 40.

This Court preliminarily approved the Virginia Action settlement on January 21, 2021, finding that the Court "will likely be able to finally approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Class."  Ex. M at 3.  After conducting a settlement hearing on May 21, 2021, this Court entered judgment approving the Virginia Action settlement and issued an order awarding attorneys' fees and litigation expenses.  Exs. N, O.  Similarly, the Delaware Court of Chancery granted final judgment on June 8, 2021 approving the Delaware Action settlement.  Ex. R.

## IV.    The Coverage Dispute

Towers Watson promptly notified Insurers of the Actions.  Ex. U.  Before Insurers even knew the underlying plaintiffs' theory of damages, the terms of any settlement, or the nature of any judgment or factual findings in the Actions, they categorically denied coverage based on the Bump-Up Exclusion.  Ex. S at 6; Exs. T-1 at 4; T-2 at 4; T-3 at 2; T-5 at 6; T-6 at 3.  Specifically, Insurers contended that any settlement or judgment in the Actions would represent an effective increase in deal consideration.  *See id.*  In response, Towers Watson explained that

the Bump-Up Exclusion does not apply for multiple, independent reasons, including that the Settlements do not "represent the amount by which [the deal] price or consideration is effectively increased." Dkt. 20 at 27-28; Dkt. 101 at 31-36.

## V.   Procedural History

On July 20, 2020, Towers Watson filed this coverage action against Insurers and promptly moved for partial summary judgment on the application of the Bump-Up Exclusion. Dkt. 1; Dkt. 20.  Insurers opposed Towers Watson's motion, seeking judgment in their favor. Dkt. 89; Dkt. 92.  On October 5, 2021, the Court granted Towers Watson's motion for partial summary judgment (the "Decision").  Dkt. 184.  In the Decision, the Court carefully analyzed the Merger and relevant policy language according to well-established principles of insurance policy interpretation under Virginia law and concluded that the Merger was not unambiguously an "acquisition" as that term is used in the Primary Policy.  Accordingly, the Court held that the Bump-Up Exclusion did not preclude coverage for the Settlements.  The Court did not reach Towers Watson's additional arguments against the applicability of the Bump-Up Exclusion.[5]

Insurers appealed the Decision to the Fourth Circuit.  On May 9, 2023, the Fourth Circuit vacated the Court's judgment, holding that the transaction between Willis and Towers Watson was an acquisition within the Bump-Up Exclusion because, among other things, for a moment in time, Towers Watson became a subsidiary of Willis before ceasing to exist.  *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 67 F.4th 648, 654 (4th Cir. 2023).  The Fourth Circuit remanded for this Court to address the remaining issues, specifically noting that its "narrow holding does not resolve the ultimate question whether the bump-up exclusion bars

---

[5] Towers Watson moves for partial summary judgment solely on the "loss" prong of the Bump-Up Exclusion, and does not address the other prongs.

indemnity coverage to Towers Watson for the underlying settlements," and that Towers Watson had raised "independent bases for the exclusion's facial inapplicability," including "that the underlying settlements don't represent an effective increase in consideration for the original Towers Watson shares." *Id.* at 657.

Towers Watson filed a petition for rehearing en banc, which the Fourth Circuit denied.

## LEGAL STANDARDS

### A.   Standards Applicable to a Motion for Summary Judgment

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56).  The interpretation and construction of an insurance policy "is a legal question well suited for resolution by the court [on summary judgment]." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 157 (E.D. Va. 1993), *aff'd*, 48 F.3d 778 (4th Cir. 1995).

### B.   Standards Applicable to the Interpretation of Insurance Policies

Under Virginia law, "[a]n insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 729 (Va. 1989).  A policy provision is ambiguous if it "may be understood in more than one way or when it refers to two or more things at the same time." *Am. Reliance Ins. Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989); *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 356 (Va. 2019) ("A 'reasonable' or 'fairly claimed' interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision.").  Any ambiguity "must be construed against the insurer." *Hill*, 375 S.E.2d at 729.

The rules safeguarding the availability of coverage are especially rigorous in the context of an exclusion.[6]  "It is axiomatic that, as drafter of the policy, it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous."  *Capitol Env't Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 643 (E.D. Va. 2008).  Under well-established Virginia law, exclusionary language must be "construed most strongly against the insurer."  *Am. Reliance Ins. Co.*, 385 S.E.2d at 585.  Indeed, Insurers bear the heavy burden of proving that Towers Watson's claims fall entirely and unambiguously within the Bump-Up Exclusion, which must be "construed strictly and narrowly, in order to maximize coverage."  *Sentry Select Ins. Co. v. Acuna*, 2011 WL 5593159, at *6 (E.D. Va. Nov. 15, 2011); *see also United Serv. Auto. Ass'n v. Pinkard*, 356 F.2d 35, 37 (4th Cir. 1966).

## ARGUMENT

### I.    The Bump-Up Exclusion Does Not Bar Coverage for the Settlements

Insurers cannot establish that the Settlements represent an effective increase in deal consideration paid to shareholders.  This is particularly true when the Bump-Up Exclusion is construed "strictly and narrowly, in order to maximize coverage," as required.  *Sentry Select Ins. Co.*, 2011 WL 5593159, at *6.  On the contrary, the indisputable evidence overwhelmingly

---

[6] This Court, the Fourth Circuit, and *every* other court to have addressed this type of policy provision has concluded that it is an exclusion. *Towers Watson & Co.*, 2021 WL 4555188, at *8; *Towers Watson & Co.*, 67 F.4th at 650; *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 67 (1st Cir. 2010); *Joy Glob. Inc. v. Columbia Cas. Co.*, 555 F. Supp. 3d 589, 594-95 (E.D. Wis. 2021), *aff'd sub nom. Komatsu Mining Corp. v. Columbia Cas. Co.*, 58 F.4th 305 (7th Cir. 2023); *Gardner Denver, Inc. v. Arch Ins. Co.*, 2016 WL 7324646, at *3 (E.D. Pa. Dec. 16, 2016); *CVR Refining, L.P. v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *4 (Del. Super. Nov. 23, 2021); *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *18-19 (Del. Super. Feb. 2, 2021), *cert. denied*, 2021 WL 772312 (Del. Super. Mar. 1, 2021), *appeal refused sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Northrop Grumman Innovation Sys., Inc.*, 248 A.3d 922 (Del. 2021); *Onyx Pharms., Inc. v. Old Republic Ins.*, 2022 WL 18143421, at *4-5 (Cal. Super. Ct. Dec. 30, 2022); *Ceradyne, Inc. v. RLI Ins. Co.*, 2022 WL 16735360, at *2 (C.D.

establishes that the Settlements do not represent an effective increase in deal consideration. This evidence includes (1) the Virginia Action Lead Plaintiff's only calculated and potentially viable theory of damages, (2) this Court's prior pronouncements regarding the plaintiff's theory of damages, (3) the terms of the Settlements, (4) the notice to the settlement classes, (5) persuasive authority from numerous courts, including the very cases on which Insurers rely, and (6) the fact that the significant attorneys' fee component of the Settlements, as well as taxes and administrative costs, were *never* paid to shareholders. Therefore, this Court should hold that the Bump-Up Exclusion does not bar coverage for any portion of either settlement.

### A.    The Settlement of the Virginia Action Did Not Represent an Effective Increase in Deal Consideration to Shareholders

Insurers cannot establish that the $75 million paid to settle the Virginia Action represents an effective increase in deal consideration, as required by the Bump-Up Exclusion, because that is not the primary measure of damages the Lead Plaintiff sought. Indeed, the viability of a Section 14(a) claim predicated on a bump-up theory is doubtful under federal law.

The Lead Plaintiff's primary theory of damages was a price reversion theory seeking "out-of-pocket" compensatory damages, not a bump-up theory seeking increased deal consideration. Ex. J. The plaintiff's theory assumed that, had the proxy materials fully disclosed, among other things, Mr. Haley's alleged conflict of interest, shareholders would have voted down the Merger and the stock price would have reverted to the pre-Merger announcement price. *Id.* ¶¶ 9, 16, 23. Indeed, this Court recognized that Dr. Tabak's "model purports to measure the loss in value all Towers stockholders experienced as a result of the Merger's announcement and approval as compared to what Towers stockholders would have retained (or

_____

Cal. Oct. 31, 2022).

obtained) had the Merger not been approved." *In re Willis Towers Watson plc Proxy Litig.*, 2020 WL 5361582, at *10 (emphasis omitted).[7]   This Court also has indicated that this theory of damages "has nothing to do with whether the consideration paid was adequate or inadequate by some measure," and "has no real demonstrable connection to whether the transaction was appropriately priced or not."  *See* Dkt. 108 at 72-73, 75.  For this reason alone, the Bump-Up Exclusion cannot apply to the Virginia Action settlement.

That the Lead Plaintiff did not calculate or meaningfully pursue bump-up damages is no accident.  A "bump-up" theory predicated on a company's purported intrinsic value cannot sustain a Section 14(a) claim under federal law.  *See, e.g.*, *Lockspeiser v. W. Maryland Co.*, 768 F.2d 558, 560 (4th Cir. 1985) (distinguishing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 478 (1977) on the ground the plaintiff was "not basing his cause of action on inadequacy of price").[8]

---

[7] *See also Towers Watson & Co.*, 2021 WL 4555188, at *4 (framing Lead Plaintiff's damage theory as "a theory of 'out of pocket' damages based on the assumption that upon fulsome disclosure of the September 2015 meeting between Haley and Ubben, the Towers Watson stockholders would have voted against the Merger . . . and the price of the publicly traded Towers Watson stock would have 'reverted' back to its publicly traded price immediately before the announcement of the Merger on June 30, 2015").

[8] *See also Mack v. Resolute Energy Corp.*, 2020 WL 1286175, at *10-12 (D. Del. Mar. 18, 2020) ("In the context of the federal securities statutes [Sections 14(a) and 20(a)], a plaintiff cannot say that the merger consideration should have been greater than it was, and that shortfall is the measure of the harm, because *to do so then would mean that it was not the material omission that caused the harm*, but that the failure of [the company] to negotiate a better deal was the cause of the harm." (emphasis added)), *aff'd sub nom. In re Resolute Energy Corp. Sec. Litig.*, 2022 WL 260059, at *3 (3d Cir. Jan. 27, 2022); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 404, 406-07 (S.D.N.Y. 2020) (dismissing 14(a) claim on the ground that plaintiffs bringing federal securities claims "are not entitled to benefit of the bargain damages which are 'unduly speculative and would result in a windfall unrelated to' the loss they suffered"), *aff'd,* 847 F. App'x 35 (2d Cir. 2021); *see also In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020) (affirming dismissal of 14(a) claim seeking bump-up damages because "[t]he suggestion that the analysts' opinions of what the shares might be worth . . . is too speculative to plead with particularity that shareholders experienced losses" or to plead that a

This Court has echoed this point, suggesting that it would dismiss a Section 14(a) claim pursued only under an inadequate consideration theory.[9]  Even the Delaware Action plaintiffs recognized this, noting that unlike in the Delaware Action, "federal law required [the Virginia Action plaintiff] to calculate damages based on an event study that measured Towers' stockholders' reaction to news of the Proposal" as opposed to a "preliminary discounted flow analysis," i.e., a bump-up theory based on purported projected value.  Ex. Q at 30-31.

Both *Northrop* and *Komatsu* are instructive on this point, and support Towers Watson's entitlement to coverage.  In *Northrop*, the Delaware Superior Court held that the Bump-Up Exclusion did not apply to a Section 14(a) claim in part due to the nature of the damages sought by the plaintiff stockholders.  2021 WL 347015, at *22.  Specifically, the court noted that the stockholders "didn't seek an appraisal to 'effectively increase[]' their stake or its value," but rather "sought unelaborated 'compensatory damages'" incurred in connection with "falsified proxy forms."  *Id.*[10]  Thus, the loss did not represent an increase in deal consideration.

Similarly, in *Komatsu,* the Seventh Circuit found that a bump-up exclusion barred

---

causal relationship exists between the alleged misrepresentations and those losses); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 646-47 (7th Cir. 2021).

[9] *See* Dkt. 108 at 26 (recognizing that if "the plaintiffs said, 'We are suing -- we allege, pursuant to Section 14(a), that as a result of the merger or acquisition, Towers Watson shareholders receive inadequate consideration,' that case would have been dismissed").

[10] Notably, the court in *Ceradyne* distinguished *Northrop* on this ground.  2022 WL 16735360, at *10.  Specifically, *Ceradyne* considered the applicability of a bump-up exclusion to a state law breach of fiduciary duty claim.  *Id.*  In that regard, it distinguished *Northrop*, which "was 'primarily' about the fiduciaries' 'dissemination of a materially false and misleading Joint Proxy Statement . . . used to obtain approval in the merger,' not inadequate consideration."  *Id.* (quoting *Northrop*, 2021 WL 347015, at *20).  Moreover, the *Ceradyne* court was persuaded by the fact that the shareholder class was expressly told that the settlement was an increase in their deal consideration.  *Id.* at *11.  Here, as stated, the Virginia Action was primarily (if not exclusively) about an allegedly false and misleading proxy statement, as opposed to inadequate

coverage for a Section 14(a) claim because the *only* measure of damages sought was an increase in deal consideration.  58 F.4th at 308.  The court recognized that the viability of a Section 14(a) claim premised on allegations that directors "violated their duties as a matter of state law by not maximizing the price the shareholders stood to receive" was "doubtful" under *Santa Fe* because "securities laws cannot be used to contend that a corporate transaction did not fetch the best price; federal regulation is limited to disclosures, while price is a subject for appraisal and other remedies under state law."  *Id.* at 307-08.  However, the court found that the exclusion applied because the policyholder could not identify *any* other theory of recovery other than a bump-up theory as the basis for the settlement:

> We asked Komatsu Mining's lawyer at oral argument whether any of the complaints offered a theory of liability that did not depend on a view that the price offered for the Joy Global shares was too low. Counsel replied, in several different ways, that the federal claim depended on inadequate disclosures. But did it depend on false or deficient disclosures about anything other than the price? Counsel did not identify any part of any complaint making such a claim, and our own review did not turn one up.

*Id.* at 308.  That, of course, is not the case here; the Virginia Action Lead Plaintiff *did* "offer[] a theory of liability that did not depend on a view that the price offered for the . . . shares was too low."  Indeed, that was the Lead Plaintiff's *primary* theory of damages, and the *only* theory of damages that was ever calculated.

Moreover, the exclusion at issue in *Komatsu* was much broader, and did not include the independent loss prong in the Bump-Up Exclusion, further confirming the inapplicability of the Bump-Up Exclusion here.  *Joy Glob.*, 555 F. Supp. 3d at 595; *Komatsu*, 58 F.4th at 309.  Thus,

---

consideration.  And, as stated, the notice to the class did not inform shareholders that they were receiving increased deal consideration.

like *Northrop*, *Komatsu* is a roadmap to why the Bump-Up Exclusion at issue here does not apply.   In fact, in the decades that insurance companies have included similar bump-up exclusions in their policies, there is not a single case nationwide holding that the exclusion bars coverage for the settlement of a 14(a) claim where the primary damages theory advanced was a non-bump-up theory.

That the Virginia Action settlement does not represent an increase in deal consideration is further reinforced by the notice to the plaintiff class and the terms of the Virginia Stipulation. The notice sent to class members never once mentions allegations of inadequate merger consideration or describes the Virginia Action settlement as an increase in merger consideration. Ex. L at Ex. A, A-1 at 8.  It would make no sense to conclude that the settlement represents an increase in deal consideration to shareholders when those shareholders were never informed of this when solicited to consider the settlement and, instead, were told that they were being compensated in connection with alleged disclosure violations.

Further, the Virginia Stipulation provides that Towers Watson "expressly den[ies] any liability with respect to the matters alleged in the Complaint," and that the merger consideration Towers Watson's "stockholders received in the Merger was in any way deficient or unfair." Ex. L ¶ 46.  Moreover, the Virginia Stipulation provides that neither the stipulation nor the plan of allocation may be "construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial." *Id.* ¶ 44.

Taken together, Insurers cannot establish that the $75 million paid to settle the Virginia Action represents an increase in deal consideration when (1) that was not the primary measure of damages the Lead Plaintiff sought, (2) the Lead Plaintiff never calculated damages based on an

increase in deal consideration, (3) the viability of a Section 14(a) claim predicated on a "bump-up" theory of damages is doubtful under federal law, (4) the notice to the class made no mention of an increase in consideration, (5) Towers Watson denied, as a material condition of the Virginia Action settlement, that the settlement would represent an increase in consideration, and (6) persuasive legal authority confirms that the Bump-Up Exclusion would not apply under these circumstances.  This is particularly true when the Bump-Up Exclusion is strictly and narrowly construed in favor of coverage as is required.

### B.    The Settlement of the Delaware Action Did Not Represent an Effective Increase in Deal Consideration to Shareholders

The $75 million Virginia Action settlement is sufficient to exhaust the remaining limits of the Policies, such that the Court does not even need to reach the Delaware Action settlement.  However, Insurers also cannot establish that the $15 million paid to settle the Delaware Action represents an effective increase in deal consideration.  The Delaware Action settled before the plaintiffs ever articulated a theory of damages and, at that time, there were alternative, non-bump-up damages theories available to the plaintiffs.   This included, for example, repayment of the executive compensation Mr. Haley allegedly received during the merger negotiations and failed to disclose in the proxy materials.  Thus, unlike in *Komatsu,* where the *only* theory of relief was a bump-up theory, Insurers cannot establish that the $15 million paid to settle the Delaware Action was clearly and unambiguously an effective increase in deal consideration.

This is underscored by the fact that the Delaware Action settlement class was never informed that the amounts it would receive under the settlement represented an effective increase in deal consideration.  Further, a material term of the Delaware Action settlement was Towers Watson's express disclaimer of liability, and that the settlement documents and plan of allocation could not be used to suggest that the "consideration to be given hereunder represents the amount

which could be or would have been recovered after trial." Ex. P at 38-39. Insurers cannot carry their heavy burden to establish that the Delaware Action settlement represented an increase in deal consideration to shareholders when the shareholders themselves were never told this, the plaintiffs had not isolated the theory of damages on which it would ultimately seek recovery, and the plaintiffs and Towers Watson agreed that the Delaware Stipulation could not be used to suggest that the settlement "represents" such an increase. To hold otherwise would require that the Court override a material term of the Delaware Action settlement and conclude that the plaintiffs' *only* theory of damages was a bump-up theory. As noted, however, the Court need not consider the Delaware Action settlement because the Virginia Action settlement exhausts the remaining limits of the Policies.

### C.     Insurers' Contrary Arguments Fail

In prior rounds of briefing regarding the Bump-Up Exclusion, Insurers raised several arguments for why the Settlements represent an effective increase in deal consideration, each of which fails as a matter of law and indisputable fact. **First**, Insurers have suggested that because the Actions contained allegations that shareholders received inadequate deal consideration, and the *complaints* in the Actions sought, in part, an increase in deal consideration, any loss paid in connection with a settlement of these suits would necessarily represent such an increase. *See, e.g.*, Dkt. 92 at 23-24; 4th Cir. Dkt. 35[11] at 34-35, 51-55; *see also* Ex. S at 6; Exs. T-1 at 4; T-2 at 4; T-3 at 2; T-5 at 6; T-6 at 3. But that argument erases the independent prong of the exclusion requiring that the settlement actually represent an effective increase in deal consideration to shareholders, and improperly converts it into an exclusion for *any* loss arising from a *claim*

---

[11]"4th Cir. Dkt." refers to the Fourth Circuit docket for the appeal in this coverage action, *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, Case No. 21-2396 (4th Cir.).

*alleging* the receipt of inadequate consideration, even in part. This violates bedrock principles of insurance policy interpretation. Indeed, as noted, courts have recognized that the independent loss element of the Bump-Up Exclusion significantly narrows its scope. *See, e.g.*, *Komatsu*, 58 F.4th at 309.

**Second**, Insurers have suggested that because Dr. Tabak had posited an alternative theory of damages based on a hypothetical renegotiation of the Merger, and because the Lead Plaintiff in the Virginia Action indicated that it would pursue that theory if the Virginia Action did not settle, the Virginia Action settlement represents an increase in deal consideration. This argument, however, ignores that Towers Watson was not settling a risk of liability based on a hypothetical damages theory buried in the last three paragraphs of the Lead Plaintiff's expert report. This is particularly true given that this theory was never even calculated and is not a viable theory under Section 14(a). Indeed, this Court has suggested that a Section 14(a) claim predicated solely on a theory that shareholders received inadequate consideration would be dismissed. Dkt. 108 at 26. That the Lead Plaintiff may have intended to pursue this spurious theory in the alternative does not change the nature of the Virginia Action settlement. On the contrary, this *alternative*, uncalculated, non-viable theory simply underscores that the actual risk of liability Towers Watson settled was not in fact a risk of being required to pay increased deal consideration, as further confirmed by the settlement documents, including the notice to the class and the Virginia Stipulation.

**Third**, Insurers have argued that because the shareholders were paid on a per-share basis, the Settlements necessarily represent an increase in deal consideration. *See, e.g.*, Dkt. 175 at 6-7. But payment on a per-share basis is simply an equitable and efficient way to distribute funds utilized in *every* class action involving shareholders. It does not reflect what the amount paid on

a per-share basis *represents*, let alone establish that the amount represents an increase in deal consideration as opposed to some other form of compensatory relief.  Indeed, payment on a per-share basis would make equal sense based on the Virginia Action Lead Plaintiff's price reversion theory, which calculated alleged damages per share based on a scenario where there was no completed deal or deal consideration.  By attempting to treat all per-share settlements of Section 14(a) claims following a corporate transaction as an effective increase in consideration, Insurers' argument undermines a fundamental purpose of D&O policies, and the Policies here in particular, which promise to protect the policyholder from lawsuits alleging wrongful acts in the context of common corporate transactions.

**Fourth**, Insurers have suggested that coverage for the Settlements would contravene the purported "purpose" of the Bump-Up Exclusion, which Insurers contend is to avoid insurers subsidizing a corporate transaction where the buyer intentionally underbids, knowing that insurance will fill the gap.  *See* Dkt. 124 at 2 (asserting that the Policies "do not permit coverage in instances . . . where the insured is asking its insurers to subsidize an acquisition—i.e., pay a 'bump up'—through insurance payments").  Towers Watson anticipates that Insurers will rely on *Komatsu* to support this position.  But this argument is woefully misplaced and self-defeating.

There is no evidence (or even allegations in the underlying complaints) that Willis *intentionally* underbid for Towers Watson hoping that insurance would fill the gap, or that the plaintiff calculated damages based on the difference between Towers Watson's purported "true value" and the amount of deal consideration actually received.  Rather, as stated, the Virginia Action Lead Plaintiff pursued a price reversion theory that assumed the Merger had never occurred.  And the Delaware Action plaintiffs did not isolate a damages theory at the time of settlement.  Neither action involved an appraisal.  Therefore, depriving Towers Watson of

coverage here would not further the so-called "purpose" of the exclusion.

In any case, the Bump-Up Exclusion's purpose can only be gleaned from its plain language, which does not encompass the Settlements here.  It certainly cannot be determined by ruminations about what Insurers may have hoped to achieve, or by analogizing to the materially broader bump-up exclusion at issue in *Komatsu*.  Indeed, the exclusion in *Komatsu* was different than the exclusion in this case, and applied to *any* claim alleging inadequate consideration, without regard to what amounts of loss – if any – represented such an increase.  58 F.4th at 307.  Insurers could have utilized a broader exclusion here, but instead, they drafted a much narrower exclusion.  *Compare* Ex. B § 13 *with Joy Glob.*, 555 F. Supp. 3d at 595 (recognizing that the Bump-Up Exclusion here is narrower because of the independent loss prong).  Thus, based on its plain language, the purpose of the Bump-Up Exclusion is to carve out a very narrow and specific category of loss from the Primary Policy's broad coverage for lawsuits arising from common corporate transactions, not to wipe out indemnity coverage for settlements for claims alleging proxy violations and seeking compensatory damages based on a price reversion damages theory.

### D.      The Amount of the Settlements Allocable to Attorneys' Fees, Taxes, and Administrative Costs Does Not Represent an Increase in Deal Consideration

At the very least, Insurers cannot establish that the portion of the Settlements paid for attorneys' fees, administrative costs, and taxes represents an effective increase in deal consideration to shareholders because these amounts will never be paid to or controlled by the shareholders.  Rather, pursuant to the plain terms of the Virginia and Delaware Stipulations,

these amounts, which total $17,626,730.78, were held in the custody of the court, and were paid to others before any funds were paid to shareholders.[12]

This conclusion is supported by the plain language of the Bump-Up Exclusion, which only bars coverage for the particular "*amount*" of the Settlements that represent an effective increase in consideration.  This confirms that the exclusion can apply to certain components of the Settlements and not others.  It is further supported by *Ceradyne*, in which the court held that the portion of the settlement proceeds allocable to plaintiffs' attorneys' fees, expenses, and administrative costs did *not* fall within the bump-up exclusion.  2022 WL 16735360, at *12.

Moreover, Insurers could have drafted the Bump-Up Exclusion to bar coverage for plaintiffs' attorneys' fees, as other insurers have done.  *See, e.g.*, *Gardner Denver*, 2016 WL 7324646, at *4 (analyzing a bump-up exclusion that expressly barred coverage for "plaintiffs' counsel fees in any Claim alleging inadequate or unfair consideration" in addition to excluding coverage for amounts representing an increase in consideration).  Insurers, however, chose not to include this additional restriction in the Bump-Up Exclusion.

Insurers' only retort in prior briefing was to accuse Towers Watson of not understanding how common fund settlements work.  Dkt. 92 at 43.  According to Insurers, it is "as if" the full amount of the Settlements was paid to the shareholders, a portion of which the shareholders then paid to their attorneys.  *Id.* at 44.  But this interpretation contravenes basic principles of insurance policy interpretation.  Exclusions do not apply in an "as-if" world.  Rather, they must be strictly and narrowly construed in favor of coverage.  Here, in the real world, shareholders

---

[12] This amount is comprised of $13,658,540.74 allocable to fees and expenses in the Virginia Action, and $3,968,190.04 allocable to fees and expenses in the Delaware Action.  Ex. O ¶ 3; Ex. R ¶ 12.

never received or controlled these funds and, thus, they do not represent an effective increase in deal consideration to those shareholders.

At the very least, Towers Watson's interpretation of the Bump-Up Exclusion is "equally possible." Therefore, the Bump-Up Exclusion does not apply to the portion of the Settlements allocable to the plaintiffs' attorneys' fees, taxes and administrative costs. *Erie Ins. Exch.*, 822 S.E.2d at 356.

## <u>CONCLUSION</u>

For the reasons stated, this Court should grant Towers Watson's motion for partial summary judgment and find that the Bump-Up Exclusion does not bar coverage for the Settlements of the Actions.

Respectfully Submitted,

Dated:  August 21, 2023

Robin L. Cohen (*pro hac vice*)
Adam Ziffer (*pro hac vice*)
Orrie A. Levy (*pro hac vice*)
COHEN ZIFFER FRENCHMAN &
MCKENNA LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 584-1890
Fax: (212) 584-1891
rcohen@cohenziffer.com
aziffer@cohenziffer.com
olevy@cohenziffer.com

/s/ *Marla J. Diaz*
Andrew J. Terrell (VSB #30093)
Marla J. Diaz (VSB #46799)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
703-280-9131
703-280-9139 facsimile
aterrell@wtplaw.com
mdiaz@wtplaw.com

*Attorneys for Plaintiff Towers Watson & Co.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the foregoing was served through the Court's electronic filing and service system this 21st day of August, 2021 to counsel of record.

<u>/s/ *Marla J. Diaz*</u>
Andrew J. Terrell (VSB #30093)
Marla J. Diaz (VSB #46799)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
703-280-9131
703-280-9139 facsimile
aterrell@wtplaw.com
mdiaz@wtplaw.com